## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **NO. 3:18-cr-00262** |
| | ) | |
| **DVANNE K. HOWARD** | ) | **JUDGE CAMPBELL** |

## <u>MEMORANDUM and ORDER</u>

## I.     INTRODUCTION

Pending before the Court is Defendant's Motion to Suppress (Doc. No. 17). The Government filed a response (Doc. No. 18), and the Defendant filed a reply (Doc. No. 20). Through the Motion, Defendant seeks to suppress items recovered from the search of his residence pursuant to a search warrant. The Court held a hearing on the Motion on July 24, 2019. After the hearing, the Court directed the parties to file supplemental briefs. The parties have now filed those briefs. (Doc. Nos. 33, 34, 35).

## II.     FACTS

The events in question occurred on July 17, 2018, between approximately 9:00 p.m. and sometime after midnight. The four Metro Nashville Police detectives involved, Michael Freels, Jonathan Jones, Bradley Hambrick, and Justin Miller, testified as witnesses at the hearing on the motion. (Doc. No. 32). The detectives also testified at preliminary hearing in state court on July 24, 2018. (Doc. Nos. 17-4, 17-5, 17-6). In addition, the detectives documented the events in question in reports filed on July 19, 2018. (Doc. Nos. 17-1, 17-2, 17-3).

The officers testified that on July 17, 2018, at approximately 8:45 p.m., detectives Jonathan Jones and Michael Freels were conducting surveillance of a house believed to be involved in narcotics trafficking. (Doc. No. 32 at PageID# 222). The detectives observed a gray Nissan Altima

arrive and park in front of the house under surveillance. (*Id*.) An individual, later identified as Dvanne Howard, exited the vehicle, went inside one of the residences for a "very brief period," got back in the Nissan and drove off. (*Id*. at PageID# 222-23).

Freels radioed his fellow officers, Detectives Bradley Hambrick and Justin Miller, to see if they could "get a traffic stop" of the Nissan. (*Id*.) Hambrick and Miller observed the Nissan speeding and attempted to conduct a traffic stop.[1] (*Id*. at PageID# 263-64). The Nissan stopped briefly, and Mr. Howard exited the Nissan from the passenger side and ran off. (*Id*. at PageID# 264). Miller exited the police car and called out "stop police" several times. (*Id*. at PageID # 300). Miller testified that he "detected an obvious and strong odor of marijuana coming from the car." (*Id*.) Hambrick, who was in the driver's seat with the door and window closed and the air conditioning running, testified that he detected a "very strong odor of marijuana in the air" when Miller opened his door. (*Id*. at PageID# 264, 281). He emphasized, "I mean, it was very strong." (*Id*. at PageID# 264).

The detectives did not pursue the Nissan, but instead searched the general area for Mr. Howard. (*Id*. at PageID# 265). Freels and Jones saw an individual matching Mr. Howard's description walking a few blocks from the location of the attempted traffic stop. (*Id*. at PageID# 312). Freels and Jones radioed Hambrick and Miller, who responded to the location.

Hambrick testified that once he identified the pedestrian as the same person who fled from the Nissan, "Detectives Freels and Jones kind of pulled in front of him. And when they went to get

---

[1] The officers were unable to read the license plate number on the car but did note that it had Tennessee wildlife specialty tags. Nevertheless, the arrest warrant affidavit stated, "Detective Hambrick attempted to stop a gray Nissan Altima with Tennessee tag 1WF647." (Hambrick, Doc. No. 32 at PageID# 264) ("I was not able to get a full tag on the Altima, but I knew it had a Tennessee wildlife license plate on it."); (Miller, Doc. No. 32 at PageID# 301) ("The car was – it had a wildlife tag on it. So it was pretty obvious when they went over [to the address] that that was the car.")

out of their car, Mr. Howard was going to run again. He turned and started to run back towards us, but we pulled up behind him, at which point he threw his hands up and laid down." He continued, "Once he laid down, he was placed into handcuffs, stood up. A search was conducted. No weapons or contraband was found on him." (*Id*. at PageID# 266). When asked why he would conduct a search, Hambrick responded, "I mean, just – based on the odor of marijuana. I could detain him based on that. The odor of marijuana coming from the car would make me be able to detain him and search his person for illegal narcotics, which a weapon would fall into the scope of that search." (*Id*. at PageID# 266-67).

Hambrick testified at the preliminary hearing in general session court that when he saw Mr. Howard, he got out of the car "began giving verbal commands to get on the ground." (Doc. 17-4 at PageID# 70).

> Q: And so you seized him?
>
> A: Yes.
>
> Q: He was not free to leave?
>
> A: No sir.
>
> Q: He was under arrest?
>
> A: At that point yes sir.
>
> Q: What had he done earlier that would have justified an arrest?
>
> A: The odor of marijuana that was observed whenever we – when Detective Miller opened the door would have given probable cause to seize the car and the people in it; so, when he fled on foot that was my reason for being able to stop him was the odor of marijuana.

(*Id*.)

All four officers questioned Mr. Howard when he was stopped. (Doc. No. 32, PageID# 286). Hambrick testified that he asked Mr. Howard for an address when he was writing the citation

for evading arrest and Mr. Howard gave two different address. (Doc. No. 32, PageID# 286). The detectives found 1724 25th Avenue North as his registered address by running his driver's license through the criminal justice portal. (*Id.*).

While Hambrick finished issuing the citation for evading arrest, Freels and Jones went to the address at approximately 10:00 p.m. and saw a gray Nissan Altima with Tennessee wildlife tags backed into the driveway. (*Id.* at PageID# 226). Jones and Freels knocked on the door and were greeted by Decash Holt and his great-grandmother Ann Rhodes. Jones explained that they were looking for the driver of the Nissan. When asked at the hearing whether the police obtained her permission to enter the house, Ms. Rhodes answered, "No, they just come in. Looking around for the boys, they said. And I just stepped back. They just come in." (Doc. No. 32 at PageID# 348). However, she later testified, "They said they was looking for the boy. I told them to come on it because the boy – I knew the boy wasn't in there … just my grand – great-grandson and myself. No other boy was in my house. And they kept insisting they want to see. Come on." (*Id.* at PageID# 357).

While in the house, the Detective Jones observed a marijuana roach "in plain view" in an ashtray in the living room and that two bedrooms in the house were locked with deadbolts. (*Id.* at PageID# 317-319). They secured the scene and applied for a search warrant based on the following statement to establish probable cause that additional drugs would be found in the house:

1. Within the past 72 hours your affiant has conducted a knock and talk at 1724 25th Avenue North. Detective Jones spoke with Ann Francis Rhodes, (She has NES in her name at the residence) and asked if he could step inside and speak with her. Mrs. Rhodes allowed Detective Jones to come inside of her residence and speak with her. Detective Jones asked her if anyone else was in the house, and asked if she would walk him around. She stated that no one else was present and would walk him around the house. Detective Jones observed in plain view a marijuana roach in an ash tray inside the residence.

4

2. Just prior to conducting our knock and talk at 1724 25th Avenue North, Detective Hambrick attempted to stop a gray Nissan Altima with Tennessee tag 1WF647. The vehicle was slow to stop and then a passenger fled on foot from the vehicle before the Altima sped off. He was later identified as Dvanne Howard when we caught him walking around Underwood Street near 23rd Avenue North. Mr. Howard used the address of 1724 25th Avenue North when asked where he lived.

3. Detective Jones and I went to 1724 25th Av N to see if the car Mr. Howard had fled from was located at his address. When we arrived at the address we found a gray Nissan Altima that matched the description Detective Hambrick gave of the vehicle that had just moments before fled from him. While standing next to the vehicle, looking inside of it I observed a bag of white powdery substance that from my experience looked like powder cocaine, in plain view in the center cup holder.

4. Based on the aforementioned facts, your affiant believes that more illegal substances other than the marijuana roach observed by Detective [J]ones will be found within 1724 25th Avenue North.

(Doc. No. 17-7).

While searching Mr. Howard's bedroom, officers found a firearm, drugs, drug paraphernalia, over $5,000 cash, and Mr. Howard's identification card. (Doc. No. 32 at PageID# 271-72; Jones Report, Doc. No. 17-2 at 4). The officers did not collect the marijuana roach from the ashtray in the living room. (Doc. No. 32 at PageID# 233, 275, 304; Jones Report, Doc. No. 17-2 at 5; Hambrick Report, Doc. No. 17-3 at 4.) The officers returned to the house later that night to attempt to collect the roach, but the ashtray was empty.[2] (*Id.*)

### III. ANALYSIS

Defendant argues the officers did not have probable cause to arrest him and that the unlawful arrest allowed police to find his house and the evidence therein. Defendant argues that

---

[2]     Ms. Rhodes, who the Court found to be a very credible witness, stated she did not see a marijuana roach in the ashtray that night or think one had been there. She indicated any butts in the ashtray were from her own cigarettes. (Doc. No. 32 at PageID# 350). Ms. Rhodes pulled one of her own brown colored cigarettes from her purse and showed it to the Court. (*Id.*) Because the officers did not collect the marijuana roach when they executed the search warrant, the Court has only the testimony of the witnesses regarding the existence of the roach.

without his home address, the police would not have gone to his home, seen the marijuana roach inside, obtained a search warrant based largely on the presence of the marijuana roach, and ultimately found the gun and drugs with which he is now charged.

The Government responds that Mr. Howard was not arrested – he was "briefly detained" in a *Terry* Stop justified by reasonable suspicion of criminal wrongdoing. In the alternative, the Government argues Mr. Howard was lawfully arrested for evading arrest. The Government does not contend the officers would have learned Mr. Howard's address by any means other than the information obtained while questioning him while he was detained.

## A. Mr. Howard Was Arrested

An arrest occurs if a reasonable person in the defendant's position would "have felt that he was under arrest or was otherwise deprived of his freedom of action in any significant way." *United States v. Richardson*, 949 F.2d 851, 856-57 (6th Cir. 1991). Not every detention, however, is an arrest. An officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further. *See Terry v. Ohio*, 392 U.S. 1 (1968); *United States v. Atchley*, 474 F.3d 840, 847 (6th Cir. 2007). A *Terry* stop must be reasonably related in scope to the circumstances which justified the stop. *Terry*, 392 U.S. at 20. "Handcuffing is ordinarily not incident to a *Terry* stop, and tends to show that a stop has ripened into an arrest." *Grice v. McVeigh*, 873 F.3d 162, 167 (2d Cir. 2017). The use of handcuffs exceeds the bounds of a *Terry* stop when circumstances do not warrant the precaution. *United States v. Foster*, 376 F.3d 577, 587 (6th Cir. 2004). In considering whether the use of handcuffs is reasonable, the relevant inquiry is whether police have a reasonable basis to think that the person detained poses a present physical threat and that handcuffing is the least intrusive means to protect against that threat. *United States v. Bailey*, 743 F.3d 322, 340 (2d Cir.

2014).

Here, the detectives testified that when they first saw Mr. Howard, "He was just – he was walking. He was walking on the sidewalk – on Underwood street." (Doc. No. 32 at PageID# 285). Hambrick said that "he turned to run," but "when he saw us, then he – he complied and raised his hands in the air and laid down on the ground." (*Id.*) None of the four detectives on the scene testified that Mr. Howard made any threatening gestures or that they feared for their safety or felt that defendant posed an immediate physical threat. According to the testimony of the police detectives, Mr. Howard was suspected of fleeing a traffic stop of a vehicle in which he was a passenger and the car smelled of marijuana. Nothing in those circumstances indicates a reasonable basis to believe Mr. Howard posed a threat and needed to be restrained with handcuffs, therefore, the use of handcuffs in this situation exceeded the bounds of a *Terry* stop.

Moreover, Detective Hambrick, the officer who made the decision to issue the citation for evading arrest, testified at the preliminary hearing in state court that Mr. Howard was, in fact, under arrest. (*See* Hambrick State Testimony, Doc. No. 17-4 at PageID# 70 ("Q: He was under arrest? A: At that point yes sir.")). At the suppression hearing, Hambrick stated that Mr. Howard was "seized" and "not free to leave." (Doc. No. 32 at PageID# 285).

This is not a circumstance where a *Terry* stop ripened into an arrest. The facts before the Court indicate that the police did not conduct an investigatory *Terry* stop at all. Instead, they immediately arrested Mr. Howard – ordered him to the ground, placed him in handcuffs, searched him (finding only some keys), and questioned him. Accordingly, the Court need not consider whether the officers had reasonable suspicion to justify a *Terry* stop of Mr. Howard, only whether they had probable cause for the arrest.

**B. The Arrest Was Not Supported By Probable Cause**

The Government claims police had probable cause to arrest Defendant under Tenn. Code Ann. § 39-16-603(a)(2), which makes it "unlawful to flee by any means of locomotion from anyone the person knows to be a law enforcement officer if the person: (A) knows the officer is attempting to arrest the person; or (B) has been arrested." Defendant argues that the police did not have probable cause to arrest him for evading arrest because there was no probable cause to arrest him for an underlying crime.

To determine whether officers have probable cause for an arrest, a court "must determine whether at that moment the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that a suspect had committed or was committing an offense." *United States v. Stubblefield*, 682 F.3d 502, 508 (6th Cir. 2012). The court is to view the facts and circumstances of the arrest from the viewpoint of an objectively reasonable police officer. *Id.* To meet the probable cause standard, the officers must have had more than mere suspicion, but they are not required to possess evidence "sufficient to establish a prima facie case at trial, much less evidence sufficient to establish guilt beyond a reasonable doubt." *Id.*

The Court considers whether, at the moment Mr. Howard fled the traffic stop, the police had probable cause to arrest him for some crime.[3] Although the Government has raised several

---

[3] There is no indication that the "evasion" stemmed from his encounter with police while walking on the sidewalk sometime after he fled the traffic stop. The detectives agree that although it looked as if Mr. Howard might run, when he saw the police, he put his hands up and laid on the ground. Freels testified that Mr. Howard "appeared he was going to run" and they "thought he may run again," but that he laid down on the ground when he saw the officers and in response to their verbal commands. (Doc. No. 32 at PageID# 225). Hambrick stated that "he started to run back towards us, but we pulled up behind him, at which point he threw up his hands and laid down." (*Id.* at PageID# 266). Miller said Mr. Howard "turned to run … and when he saw us, then he – he complied and raised his hands in the air and laid down on the ground." (*Id.* at PageID# 285).

potential "crimes" for which the police allegedly had probable cause to arrest defendant at the time of the traffic stop, it appears to have settled on the theory that the officers had probable cause to arrest Mr. Howard for "simple possession or casual exchange of marijuana" based on Defendant's presence in a house being investigated for narcotics trafficking and the odor of marijuana emanating from the vehicle in which he was a passenger. In addition, the Government argues that Defendant's flight from the vehicle is both an additional circumstance contributing to probable cause and the offense itself – evading arrest.

The proffered reasons for the arrest by the Government and law enforcement raise serious concerns about the real reason for Mr. Howard's arrest.[4] The Court views the testimony regarding the odor of marijuana and supposed attempt to arrest Mr. Howard for possession with skepticism. Importantly, the claim that police intended to arrest Defendant for possession of marijuana based

---

[4] The basis for his arrest has been a moving target. One of the potential arrestable offences included "failure to wear a seatbelt." (Doc. No. 18 at 13). The Government asserted that Mr. Howard jumped from a moving car and was therefore in violation of the seatbelt ordinance, when the testimony and police reports clearly state that the car stopped. The Government wrote, "The Defendant jumped out of the slowly rolling vehicle and ran. … Upon seeing the Defendant flee from a moving vehicle, officers had probable cause to believe that the defendant had committed the crim of failure to wear a seatbelt in a moving vehicle" (Gov't Br., Doc. No. 18 at 14); (*see also* Gov't. Br., Doc. No. 33 at 2) ("The car slowed down, defendant jumped out of the passenger's side of the Altima, and fled on foot." (citing Hambrick's hearing testimony, Doc. No. 32 at PageID# 264)). This conflicts with Hambrick's actual testimony, "Vehicle was still kind of slow, but it pulled to the right and stopped." (Doc. No. 32 at PageID# 264). Hambrick's police report also states, "The vehicle comes to a stop and the front seat passenger exited the vehicle and fled on foot." (Doc. No. 17-3). Only Freels's Report gives some support for the assertion that the car was still moving when Mr. Howard got out. (Doc. No. 17-2). Freels, however, was not present during the attempted traffic stop. The Government did not raise this argument in post-hearing briefs, presumably because the evidence indicates that the car did, in fact, come to a stop.

The assertion that police attempted to arrest Mr. Howard for possession of marijuana and that he was later arrested on charges of evading that attempted arrest is also contradicted by the officer's testimony. The testimony from Freels and Hambrick indicates Mr. Howard was arrested for fleeing the traffic stop, not for fleeing an attempted arrest for possession of marijuana. (Doc. No. 32 at PageID# 267) (Hambrick said, "Once I smelled – once I observed the odor of marijuana, then I could detain him with that vehicle. So, no, he is not free to leave at that point."); (Freels Testimony, Doc. No. 32 at PageID# 245) ("Q: You indicated he was given a citation for evading arrest? A: Yes. Q: All right. And what was the arrest that he was evading for? A: Would have been the resisting a stop.").

on the "strong odor" is never mentioned in the police reports filed on July 19, 2019, two days after the events. In fact, the police reports and affidavit in support of the search warrant do not mention anything at all about the odor of marijuana coming from the car or from Mr. Howard, casting doubt that this was the reason Mr. Howard was arrested. (*See* Doc. No. 17-1, 17-2, 17-3, 17-7). Further, the testimony that officers inside a patrol car could smell the "strong odor" of marijuana from another car many feet away when the other car stopped momentarily and its door was briefly opened before the car sped away strains credulity.[5]

The police seem to have taken the view that because they could have *detained* Mr. Howard with the car during a traffic stop, his flight from the traffic stop constituted evasion of arrest. Freels said that the arrest that Mr. Howard was allegedly evading was "resisting a stop" – apparently referring to the traffic stop. (Doc. No. 32 at PageID# 245). Hambrick previously testified that the arrest for evading arrest was justified because they had probable cause to "seize the car and the people in it," indicating that not complying with the attempted traffic stop was probable cause for an arrest for evading arrest. (Doc. No. 17-4 at PageID# 70). The traffic stop itself, however, was not an arrest, and the Government has not raised any authority showing that a passenger fleeing a traffic stop is, itself, a crime. In the end, in the context of "evading arrest," the Government is unable to answer satisfactorily the question: "Arrest for what?"

Furthermore, the evidence does not show the police had probable cause to believe Mr.

---

[5]    Moreover, any odor coming from the car was not necessarily attributable to Mr. Howard, it could have come from the driver or the car itself. The Court is unconvinced that the odor of marijuana coming from a vehicle gives probable cause to arrest Mr. Howard merely because he was one of the occupants of the vehicle. *See United States v. Brock*, No. 13-cr-6025, 2016 WL 3743242 (W.D.N.Y. July 13, 2016) ("[T]he generalized smell of marijuana coming from a multi-occupant vehicle [does not] provide probable cause to arrest everyone in the vehicle for the offense of possessing marijuana … Nothing in the evidence adduced at the hearing pointed to the defendant as the source of the marijuana smell as opposed to any other occupant of the vehicle, so as to justify his, rather than anyone else's, arrest for unlawful possession of marijuana…" (citing *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)).

Howard was evading arrest as defined by Tennessee law.  As stated above, the Tennessee evading arrest statute makes it unlawful for a person to flee a law enforcement officer if the person either has been arrested or knows the officer is attempting to arrest the person.  Tenn. Code Ann. § 39-16-603.  It is a defense that the attempted arrest was unlawful. *Id.*  The Government does not argue that Mr. Howard had been arrested when he fled the traffic stop and there is no evidence in the record to show that Mr. Howard knew Detective Miller was attempting to arrest him when he yelled "stop police." (*See* Miller Testimony, Doc. No. 32 at PageID# 300).  To the contrary, the circumstances indicated that the detectives were attempting to effect a traffic stop of the vehicle and its occupants.  The testimony of the police supports this conclusion.

The Court finds that the police did not have probable cause to arrest Mr. Howard for evading arrest because they had no probable cause to arrest him for an underlying crime and because Mr. Howard did not know the police were attempting to arrest him (because they were not) when he ran off.  *See State v. Holbrooks*, 983 S.W.2d 697, 703 (Tenn. Crim. App. 1997) (dismissing conviction for evading arrest when defendant ran from police because the officer lacked probable cause for a primary arrest).

## C.  The Evidence Obtained Through the Unlawful Arrest Must Be Suppressed

Generally, if a seizure is not conducted in compliance with the Fourth Amendment, all evidence obtained as a result of the seizure must be suppressed.  *See United States v. Gross*, 550 F.3d 578, 583 (6th Cir. 2008) ("Evidence and statements obtained from [an] illegality must be excluded as 'fruit of the poisonous tree.'" (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963))). Exclusion is to be used as a "last resort, not [a] first impulse." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006).

Here, the police did not find physical evidence of criminal wrongdoing on Mr. Howard

when they arrested him – only various keys. What they did obtain during the arrest, however, was Mr. Howard's home address. Defendant argues that any evidence found at his home should be suppressed because, but for the arrest, the police would never have learned his home address and thus would not have gone to that house and obtained a warrant to search it. The Government argues that even if the evidence did come to light because of a Fourth Amendment violation, it is sufficiently attenuated to purge any taint.

The Supreme Court has held that "evidence will not be excluded as 'fruit' unless the illegality is at least the 'but for' cause of the discovery of the evidence." *Segura v. United States*, 468 U.S. 796, 815 (1984). Evidence obtained as a result of a Fourth Amendment violation is admissible if "the chain of causation proceeding from the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstance so as to remove the 'taint' imposed upon that evidence by the original illegality." *United States v. Crews*, 445 U.S. 463, 471 (1980). Courts assess whether taint is sufficiently attenuated by considering: (1) the amount of time elapsed between the illegality and the acquisition of evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the misconduct. *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975).

The Government argues that consent from Ms. Rhodes to enter the home and the marijuana roach in plain view are intervening circumstances justifying the admissibility of the evidence found in the home. The Court disagrees. Ms. Rhodes consent to enter the house does nothing to explain how the police would have arrived at the address absent information obtained from Mr. Howard during his unlawful arrest. The Court finds that her consent does not break the causal chain between the unlawful arrest and the police going to Mr. Howard's house. This is not a case in which evidence was obtained through an independent source. The Government has cited no basis

on which the police would have found Mr. Howard's home other than the statements he made during his unlawful arrest. The evidence found at the home must, therefore, be excluded. *See Wong Sun*, 371 U.S. at 488 (excluding evidence obtained as a consequence of statements made during unlawful arrest).

## IV.    CONCLUSION

In summary, the Court finds that Defendant's purported arrest for evading arrest was not supported by probable cause and that the police went to Defendant's home and found evidence there as a direct result of information learned as a consequence of the unlawful arrest. The evidence was not sufficiently attenuated so as to dissipate the taint of the unlawful conduct. Accordingly, Defendant's Motion to Suppress is **GRANTED**.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE